## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CHILD EVANGELISM FELLOWSHIP OF RHODE ISLAND, INC., <br><br> Plaintiff, <br><br> v. <br><br> PROVIDENCE PUBLIC SCHOOL DISTRICT and DR. JAVIER MONTAÑEZ, in his official capacity as Superintendent of Providence Public School District, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  C.A. No. 1:23-CV-00099-MSM-LDA |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

The plaintiff, Child Evangelism Fellowship of Rhode Island, Inc. ("CEF"), brought this matter against the defendants, Providence Public School District and its superintendent, Dr. Javier Montañez, pursuant to 42 U.S.C. § 1983, alleging that the defendants violated its civil rights under the First and Fourteenth Amendments to the United States Constitution.  Pursuant to a Consent Order and Judgment, CEF was declared the prevailing party under 42 U.S.C. § 1988.  (ECF No. 25 ¶ 12.)

CEF now moves pursuant to Fed. R. Civ. P. 54 and Local Rules 54 and 54.1 for entry of an order awarding it attorneys' fees in the amount of $96,162.50 and costs in the amount of $3,413.79.  (ECF No. 36.)  The defendants object, arguing that the amount of attorneys' fees sought is unreasonable.

1

For the following reasons, CEF's Motion is GRANTED IN PART and DENIED IN PART.

## I.    BACKGROUND

As alleged in its verified Complaint, in August 2021, CEF requested access from the Providence Public School District to use the facilities at two elementary schools to host its voluntary after school program, the Good News Club. (ECF No. 1.) The defendants failed to provide an answer and, on November 5, 2021, counsel for CEF sent a demand letter outlining its view that the defendants were obliged to provide CEF with access to school district facilities on an equal basis to that provided to similarly situated organizations. Instead of providing access, the school district informed CEF of a list of new, previously unmentioned requirements for CEF to obtain access to district facilities.

CEF's counsel thereafter sent a second demand letter to the defendants on December 10, 2021, again outlining its position that the defendants were required to provide CEF with access equal to that of other similarly situated organizations. The defendants responded with additional new requirements that led to months of correspondence and communications. CEF's counsel then sent a third demand letter, on February 25, 2022, with an offer to resolve the matter without litigation. But the defendants responded with six more requirements which CEF contends were not imposed on any other organizations. CEF made a fourth and final attempt at resolution, again unsuccessful, and ultimately filed the instant suit on March 10, 2023.

The defendants did not timely respond to the suit and a default entered. The defendants successful moved for removal of the default and the Court scheduled a hearing on CEF's motion for a preliminary injunction for July 11, 2023. The defendants never filed a written objection to CEF's motion but did send counsel to appear for the hearing and to contest the motion. The Court heard argument but reserved on ruling on the motion and ordered the parties to meet and confer in the meantime and to provide a joint status report to the Court by July 17, 2023.

The parties negotiated a Consent Order, filed with the Court on July 18, 2023, wherein the parties agreed that the defendants would provide CEF access to school district facilities "that is equal to and on the same terms as other similarly situated nonreligious organizations offering programs to students in the District." (ECF No. 25 ¶ 9.) Because the parties agreed that CEF was the prevailing party under 42 U.S.C. § 1988, and therefore eligible for an award of attorneys' fees, the parties attempted to resolve CEF's claim for fees and costs. Failing to do so, CEF filed the instant motion.

## II.    DISCUSSION

### A. Attorneys' Fees

"In civil rights cases, Congress wanted a prevailing plaintiff's attorney to be compensated 'for all time reasonably expended on a matter.'" *Pérez-Sosa v. Garland*, 22 F.4th 312, 322 (1st Cir. 2022) (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 91 (1989)). Thus, pursuant to 42 U.S.C. § 1988(b), "the court, in its discretion, may allow the prevailing party [in civil rights litigation under 42 U.S.C. § 1983] a reasonable

attorney's fee as part of the costs."

The parties agree on the lodestar method to determine the fee award.  Under the lodestar method, a base figure is calculated by "multiplying the number of hours productively spent by a reasonable hourly rate." *Torres–Rivera v. O'Neill–Cancel*, 524 F.3d 331, 336 (1st Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "In fashioning the lodestar, a district court may adjust the hours claimed to eliminate time that was unreasonably, unnecessarily, or inefficiently devoted to the case." *Torres-Rivera*, 524 F.3d at 336 (citing *Hensley*, 461 U.S. at 434).  Additionally, "a district court, in fashioning a fee award, may reduce hours claimed in a fee request for time spent on work that it determines to be 'unproductive, excessive, or otherwise unnecessary.'" *Pérez-Sosa*, 22 F.4th at 328 (quoting *Grendel's Den v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984)).  Moreover, cryptic entries that are "'too generic and, thus insufficient as a practical matter to permit a court to answer questions about excessiveness, redundancy, and the like,' the court need not accept them at face value." *Id.* at 330 (quoting *Torres-Rivera*, 524 F.3d at 336).  "Instead, 'the court may either discount or disallow those hours." *Id.*

"In effecting such a reduction, though, the court must make 'reasonably explicit findings' and 'spell out the whys and wherefores.'" *Id.* (quoting *Coutin*, 124 F.3d at 337).  But "[b]ecause district judges 'need not, and indeed should not, become green-eyeshade accounts,' they 'may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.'" *Id.* (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).  The overall task "is to do rough justice, not to achieve

4

auditing perfection." *Id.*

### 1. Hourly Rate

The "reasonable hourly rate" under the lodestar method requires a "determination that is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence." *Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emps. v. Ray Haluch Gravel Co.*, 745 F.3d 1, 3 (1st Cir. 2014) (quoting *Hensley*, 461 U.S. at 434). CEF has provided, pursuant to Local Rule 54.1(b)(2), the affidavit of a disinterested attorney, Michael D. Pushee, attesting that the rates requested are reasonable for cases of this kind in federal court in Rhode Island and are consistent with the usual and customary charges by attorneys of similar experience and qualifications in this type of matter. (ECF No. 36-2.) CEF also cites recent precedent from this district indicating that the rates it seeks are within the range of the rates approved in other cases. (ECF No. 36 at 10.)

The defendants do not challenge the claimed hourly rates and the Court finds that CEF has sufficiently demonstrated these rates are acceptable.[1] But the defendants do ask that the Court distinguish between "core" and "non-core" legal work. "[W]hen constructing a fee-shifting award," a district court has the discretion to "set two separate hourly rates for a particular attorney—one for 'core' tasks like 'legal research, writing of legal documents, court appearances, negotiations with

---

[1] Of the claimed attorney rates, CEF asserts hourly rates of $475 for Attorneys Mihet and Gannam; $400 for Attorneys Schmid and Mast; and $200 for Attorney Phillips. (ECF No. 36-1 at 12.)

opposing counsel, monitoring, and implementation of court orders' and a lower one for 'non-core' tasks, which are 'less demanding,' such as 'letter writing and telephone conversations.'" *Pérez-Sosa*, 22 F.4th at 327-28.  The defendants ask that the Court reduce the hourly rates for CEF's attorneys' non-core legal work such as email correspondence, telephone calls, and travel time.

Although it certainly is within this Court's discretion to make that reduction, the Court will not in this instance.  Instead, the Court will strike the 34.5 hours attributed to the legal assistants.  This serves to eliminate administrative tasks from the extensive billing and narrows the billing closer to the goal of identifying attorney tasks reasonably expended on the litigation.  Furthermore, the legal assistants' time, if not purely secretarial work such as updating the file, appears redundant of attorney time, such as reviewing the file, attending a hearing remotely, or the sending of emails.  In addition, many of these entries—such as "file notes" or "email to client"— are "too generic and, thus insufficient as a practical matter to permit a court to answer questions about excessiveness, redundancy, and the like." *See Pérez-Sosa*, 22 F.4th at 328.

### 2. Hours Productively Spent

The Court now determines which of the claimed hours CEF's attorneys reasonably and productively spent on the litigation.  The defendants attach an exhibit helpfully arranging CEF's claimed fees into several categories, the first of which is pre-litigation.  (ECF No. 37-2 at 3.)  The defendants argue that CEF should be awarded no fees for its attorneys' pre-suit services because under § 1988 an award of

attorneys' fees should be limited to those hours that were "reasonably expended on the litigation." (ECF No. 37-1 at 6.) But this stance does not conform to the law. "[S]ome of the services performed before a lawsuit is formally commenced by the filing of a complaint are performed 'on the litigation.'" *Webb. v. Bd. of Educ. of Dryer Cnty.*, 471 U.S. 234, 243 (1985). "Most obvious examples are the drafting of initial pleadings and the work associated with the development of the theory of the case." *Id.* Indeed, "investigation, preliminary legal research, drafting demand letters, and working on the initial complaint are standard preliminary steps toward litigation." *Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emps.*, 571 U.S. 177, 189 (2014).

Here, the pre-litigation time entries include the drafting of the demand letters, review of the defendants' policies, and a public records request. (ECF No. 37-2 at 3-4.) These entries are generally acceptable, and it is not lost on the Court that the pre-suit period extended for almost two years due to the delay of the defendants. The Court will, however, strike the 3.4 hours devoted to review of the draft complaint and motion for preliminary injunction as this is duplicative of extensive work billed on those pleadings discussed in the next category below. After that deduction, and after subtracting all legal assistant time, the award for pre-litigation services comes to $5,000.

### a. Complaint and Motion for Preliminary Injunction

CEF claims a total of 68.4 attorney hours for drafting and revising the complaint and the motion for a preliminary injunction. It is unclear from the cryptic,

multiple entries stating only that these documents were being "revised" what specific work warranted blocks of time sometimes as high as 7.1 and 8.5 hours at a time. *See Pérez-Sosa*, 22 F.4th at 330. The Court can only conclude that these entries are duplicative or inefficiently devoted to the case and concludes that a total of 20 hours for the preparation of these two documents is appropriate. The total award for this category therefore is $9,500.

### b.  Hearing on the Motion for a Preliminary Injunction

After removing the legal assistant time, CEF's claim for attorney travel to, preparation for, and attendance at the hearing on the motion for a preliminary injunction comes to 32.3 hours. Travel time is 14 hours, which the Court will not disturb. But the 18.3 total hours for the hearing (which lasted approximately an hour) and the preparation (which only would have included CEF's filings as the defendants never objected in writing) is facially excessive. Attorney Schmid was indeed well-prepared for his appearance, but this could have been achieved in a total of 10 hours, including the hearing time. The Court will therefore award a total of $9,600 for hearing preparation, travel time, and conduct of the hearing.

### c.  Consent Decree

CEF claims a total 8.7 attorney work hours regarding the consent order. The Court finds some of the billing entries here to be excessive and duplicative. Attorney Schmid logged a total of 7.4 hours, billed in two separate blocks of 3.5 and 3.9 hours for preparation, review, and other tasks related to the consent order. The Court finds that the 3.5 hours is reasonable for the drafting and other tasks related to the four-

page consent order and therefore strikes the 3.9-hour entry. The total award for work related to the consent decree is therefore $1,820.

### d. Motion for Attorneys' Fees

"[T]ime reasonably expended in connection with fee applications is itself compensable, but, since time spent in this exercise often amounts to little more than documenting what a lawyer did and why he or she did it, it may fairly be compensated at a reduced rate." *Brewster v. Dukakis*, 3 F.3d 488, 494 (1st Cir. 1993) (internal quotations and citations omitted). CEF claims a total of 46.7 hours related to its motion for attorneys' fees, spanning from negotiation with the defendants, legal research on reasonable hours and rates, and the drafting of the instant motion. (ECF No. 37-2 at 6.) The Court finds this amount of time excessive and unreasonable. CEF notes other cases where about 30 hours of billed time was deemed reasonable for a motion to recover attorneys' fees: *Jacobs v. Mancuso*, 825 F.2d 559, 563 (1st Cir. 1987) (30 hours); *Brewster*, 3 F.3d at 494 (31.6 hours). But a claim for attorneys' fees in a given case must be considered in the context of that case and other matters are often distinguishable. For instance, *Jacobs* involved "significant motions and pleadings, strongly resisted discovery, a difficult battle over class certification, and an extensive effort to identify and obtain recovery for members of the affected class." 825 F.2d at 564. Most of that is lacking in this case. Although this case was plagued by delay and non-responsiveness on the part of the defendants, the matter involved no discovery and was readily resolved once the case was brought on for hearing on the motion for injunctive relief. The Court finds that 15 hours is acceptable for the

instant motion which would afford five hours each for negotiations, research, and drafting.  This brings the award for work done on the motion for attorneys' fees to $6,000.

### e.  Other Charges

The "other charges" category includes 16.8 hours of attorney time devoted to researching default rules, "analyzing issues related to default," drafting the three pleadings associated with defaulting the defendants (which ranged from two to four pages), and communicating with defense counsel on the default.  This is facially excessive—and duplicative for multiple attorneys to be working on this routine issue—and the Court reduces the time allowed on the default motion to five hours. Because three attorneys billing at three different rates logged time on the default issue, the Court will average the three rates and multiply that figure ($358.33) by the five hours to reach an award of $1,792.65.

CEF's attorneys also billed an excessive 7.3 hours for the handling of pro hac vice motions including, for example, 3.1 hours for the drafting of "local counsel's admission certificate."  (ECF No. 37-2 at 9.)  This excessive amount of time for these routine motions will be reduced to two hours, which at the billed rate equals $400.

This leaves 30.5 attorney hours remaining.  Many of these are cryptic entries such as file review, intraoffice communications, emails and telephone calls with insufficient description.  (ECF No. 37-2 at 9-11.)  Because such imprecise records prevent a court from adequately assessing whether counsel's time was reasonably and productively spent, such "fees should be reduced or even denied altogether."

*Dreary v. City of Gloucester*, 9 F.3d 191, 197-98 (1st Cir. 1993). The Court will reduce these miscellaneous charges by 50% at the average billing rate of the three attorneys making these entries, for a total of $5,464.53.

Adding all of the above categories comes to a total fee award of **$39,577.18**.[2]

## B. Costs

CEF claims $3,413.79 in costs. CEF timely sought its award of costs, properly itemized them and provided receipts, and supported them by way of the affidavit of Attorney Horatio G. Mihet. (ECF No. 36-1 ¶¶ 28-29.) The defendants do not object to these claimed costs and the Court finds them reasonable. CEF, therefore, is awarded $3,413.79 in costs pursuant to Fed. R. Civ. P. 54.

## III.    CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART CEF's Motion for Attorney's Fees and Costs (ECF No. 36). The Court awards CEF $39,577.18 in attorneys' fees and $3,413.79 in costs for a total award of $42,990.97.

IT IS SO ORDERED.

_____

Mary S. McElroy
United States District Judge

March 22, 2024

---

[2] The Court notes that CEF voluntarily reduced its claim by 186.5 hours and appreciates that gesture, but, because the presented claim of $96,162.50 was itself excessive, the Court accords it little weight.